IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KATHY HUTCHINS, )
)
        **Plaintiff,** )
) CIVIL ACTION
v. )
) No. 12-1410-KHV
CESSNA AIRCRAFT COMPANY, )
)
        **Defendant.** )
_____)

## MEMORANDUM AND ORDER

Plaintiff brings suit under the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA"), and the Employee Retirement Income Security Act, 29 U.S.C. § 1140 ("ERISA"), claiming employment discrimination and interference with pension benefits as a result of the termination of her employment. This matter is before the Court on the following motions: (1) Defendant Cessna Aircraft Company's Motion To Dismiss Plaintiff's First Amended Complaint (Doc. #25) filed March 28, 2013; (2) Defendant Cessna Aircraft Company's Motion To Dismiss Or Strike Plaintiff's Second Amended Complaint (Doc. #32) filed May 1, 2013; and (3) Cessna Aircraft Company's Motion For Summary Judgment (Doc. #40) filed July 26, 2013. For the following reasons the Court overrules defendant's motions to dismiss and sustains defendant's motion for summary judgment.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535,

1538-39 (10th Cir. 1993). A "genuine" factual dispute is one "on which the jury could reasonably find for the plaintiff," and requires more than a mere scintilla of evidence. Liberty Lobby, 477 U.S. at 252. A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Id. at 248.

The moving party bears the initial burden of showing that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Justice v. Crown Cork & Seal Co., 527 F.3d 1080, 1085 (10th Cir. 2008). Once the moving party meets its burden, the burden shifts to the nonmoving party to show that a genuine issue remains for trial with respect to the dispositive matters for which she carries the burden of proof. Nat'l Am. Ins. Co. v. Am. Re-Ins. Co., 358 F.3d 736, 739 (10th Cir. 2004); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). As to these matters, the nonmoving party may not rest on her pleadings but must set forth specific facts. Fed. R. Civ. P. 56(e)(2); Matsushita, 475 U.S. at 586-87; Justice, 527 F.3d at 1085. Conclusory allegations not supported by evidence are insufficient to establish a genuine issue of material fact. Jarvis v. Potter, 500 F.3d 1113, 1120 (10th Cir. 2007); see Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 853 (10th Cir. 1996).

When applying this standard, the Court must view the factual record in the light most favorable to the party opposing the motion for summary judgment. Duvall v. Ga.-Pac. Consumer Prods., L.P., 607 F.3d 1255, 1260 (10th Cir. 2010); see Ricci v. DeStefano, 557 U.S. 557, 586 (2009). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250-51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

**Facts**

The following facts are uncontroverted or presented in the light most favorable to plaintiff:[1]

Plaintiff began employment at Cessna in 1978 as an Accounting Clerk in the Finance and Accounting Department. In February of 1979, she transferred to the Engineering Department as a Project Clerk. While she was on maternity leave in 1982, Cessna had a reduction in force and laid off plaintiff until April of 1983. Upon her return, plaintiff became a Tech Aide/Data Analyst in the Interior Engineering Department. Plaintiff remained in the Interior Engineering Department until 2011, where she consecutively held the positions of Engineering Group Leader, Engineering Section Supervisor and Engineering Business Partner. In a reorganization effective September 11, 2011, Cessna transferred plaintiff to the Finance Department where she became a Finance Business Partner ("FBP"). On August 31, 2012, Cessna terminated plaintiff from the position of FBP but told her that she would remain on the payroll until September 30, 2012, so she could look for another position within the company. If she did not find another position, her employment would terminate on September 30, 2012 and she would receive a severance package contingent on signing a severance agreement. Plaintiff did not apply for any other positions within Cessna, however, and Cessna terminated her employment on September 30, 2012.

Plaintiff's last move within the Interior Engineering Department, which occurred in November of 2010, was a demotion. Because of restructuring within the Department, plaintiff's responsibilities had diminished and her salary decreased by about 7.5 per cent. Cessna then had a significant reduction in workforce and the Interior Engineering Department lost about half of its

---

[1] The Court does not address defendant's motions to dismiss because it sustains defendant's summary judgment motion on the merits. In setting forth the facts, the Court looks to the factual record and does not assume the truth of plaintiff's factual allegations.

employees. In an ensuing restructuring, Cessna determined that all individuals who performed finance-related duties should move to the Finance Department rather than remain in the departments which they supported. Plaintiff was included in this transfer and continued to provide budget-related services to the Interior Engineering Department, but she also became responsible for supporting half of the Engineering Department. In this role, plaintiff was responsible for providing guidance and support for manpower planning, expense budgets and reports, capital equipment and labor reports. Plaintiff's transfer to the Finance Department was a lateral move, but she was aware that performance expectations within Cessna were increasing and that employees were expected to perform at a higher level.

The expectations and job criteria for the position of FBP (specifically a Grade 10 FBP, the level which plaintiff held) are set out in a Finance Grade Matrix which includes the following criteria. A Grade 10 FBP is expected to apply extensive knowledge of other related finance disciplines and develop technical solutions to complex problems, which requires the regular use of ingenuity and creativity. A Grade 10 FBP also is expected to perform work without appreciable direction, and to exercise considerable latitude in determining the objectives of the assignment. Morever, a Grade 10 FBP is expected to set objectives and deliver results that have a significant impact on achieving Finance results, because any errors may result in the failure to achieve important Finance objectives. Furthermore, a Grade 10 FBP is expected to have a bachelor's degree and/or at least nine years of relevant experience, and it is preferred that a Grade 10 FBP have an MBA or an applicable professional license. Indeed, Cessna prefers that FBPs at all grades (4, 6, 8 and 10) have an MBA or a professional license. Doc. #41-12 at 6.

Plaintiff concluded her post-secondary education in 1995 when she received a two-year

associate's degree. Plaintiff used Cessna's tuition reimbursement program to obtain her associate's degree and although she was eligible to do so, she never applied for additional tuition reimbursement or pursued further education. Of those who held FBP positions during plaintiff's tenure, she was the only one without a four-year college degree. All but one had a four-year accounting or finance degree, and that one individual was a lower Grade 6. Even before plaintiff became an FBP, she recognized her need for additional education. On April 25, 2011, in the "Development Plan Focus" section of her employee profile, plaintiff wrote the following: "Further develop my skills related to budget reporting and forecast coordination by continuing my education related to Finance as well as tool utilization (such as Excel and Essbase)." Doc. #41-13 at 4. After that date, however, plaintiff took no finance-related training courses or classes.

Upon her transfer to the Finance Department, plaintiff was supervised by Michele Gifford, who had recently been promoted to Director of Finance. Gifford, who holds a bachelor's degree in accounting and an MBA, began working at Cessna in 1998 and had been in a managerial position in the Finance Department since 2006. Her role as Director of Finance was to be the internal liaison between the Finance Department and the different areas that the department supported.

When plaintiff was in the Interior Engineering Department, several employees who worked with her believed that she did a good job. They described her work as primarily providing spread sheets or other sorts of tactical number crunching, as opposed to strategic analysis (which plaintiff did not do). None of these employees supervised plaintiff or had any knowledge of the expectations, educational requirements or responsibilities of a Grade 10 FBP.[2]

---

[2] Some of these same individuals also stated that plaintiff's successor provided better service and a higher level of analysis than plaintiff had provided.

Some time after the beginning of 2012, Gifford met with Christine Manuel, a Cessna Human Resources Business Leader who supported the Finance Department, to discuss plaintiff's performance. They discussed plaintiff's lack of formal education and her lack of understanding basic finance and accounting principles. Both Gifford and Manuel believed that a finance or accounting degree was integral to successful FBP performance. By early March of 2012, Manuel was recommending that plaintiff be demoted to a Grade 8 FBP and she and Gifford agreed to work towards that end.

Manuel and Gifford met with plaintiff on March 19, 2012, to discuss gaps in her performance compared to the expectations of a Grade 10 FBP. They did not address the possibility of a demotion. They addressed plaintiff's lack of (1) basic finance technical skills, (2) understanding the financial implications of certain decisions, (3) understanding the difference between a balance sheet versus a financial statement and (4) understanding a trial balance and why it was relevant to her. They spoke to plaintiff about how her lack of a four-year college degree and general experience in finance was affecting her performance as an FBP, and Gifford said she did not think that plaintiff could successfully meet the Grade 10 FBP expectation of being able to rotate and support any area of the company. In spite of these issues, Gifford hoped that plaintiff could bridge the performance gap if she made the effort to gain the necessary additional knowledge or experience – although a four-year degree would not by itself solve the problems.

After the meeting on March 19, 2012, Manuel contacted Halsey, who had supervised plaintiff in the Interior Engineering Department, to inquire whether positions in that department for which plaintiff was qualified might be available. No such positions existed, but Halsey contacted the Cessna Service Center manager, who said that he would let Halsey know if a position became

available in his department.  Ultimately, no position came open.

For a week after the meeting on March 19, 2012, Gifford was away from the office attending a conference.  In seriatim absences, plaintiff was gone for a week of vacation, Gifford was out for six weeks following back surgery and Manuel took a week-long vacation.  Finance Managers Bill Akler and Renee Cassil filled in during Gifford's absence.  Upon her return, Gifford asked Akler and Cassil for feedback on plaintiff's performance.  Akler reported that plaintiff was unsure of herself in making relatively routine decisions for a Grade 10 FBP, and Cassil opined that plaintiff did not have a basic understanding of accounting and did not properly spot problems in accruals which prevented her from understanding when they needed correction.  By approximately July of 2012, Gifford concluded that plaintiff lacked such basic understanding of finance and accounting principles that a demotion to a lower grade FBP would not allow her to be any more successful than she was at her current grade.

Gifford and Manuel discussed the possibility of terminating plaintiff's employment and in an email to Gifford dated August 8, 2012, Manuel proposed a plan.  That same day, Manuel also presented the proposal to Cindy Poulson, Human Resources Business Leader, for her input and final approval.  Manuel explained that plaintiff continued to lack the skills and judgment of a Grade 10 FBP, and that Gifford did not believe that plaintiff could be successful at any FBP level.  In her email, Manuel suggested that plaintiff receive 30 days to find other employment within Cessna; otherwise, plaintiff's employment would be terminated and she would receive a severance package. Gifford made the decision to terminate plaintiff.  Manuel provided guidance and Poulson gave final approval.

On August 31, 2012, Gifford and Manuel met with plaintiff to advise that she was being

-7-

terminated from her position because Gifford believed that plaintiff did not have the qualifications for and was not meeting Gifford's expectations of a Grade 10 FBP. They advised plaintiff that her effective termination date was September 30, 2012, unless she found other employment within Cessna. Plaintiff did not apply for any other jobs at Cessna.

Following plaintiff's termination, Jennifer Faust filled plaintiff's position. Faust was in her early 40s, had worked at Cessna since 1998 and had been an FBP since December of 2010. Faust is a Grade 10 FBP and holds a bachelors degree in accounting.

At the time of the decision in August, 2012 to terminate plaintiff's employment, Gifford, Manuel and Poulson were not aware of plaintiff's age. They did not consider plaintiff's age, how close plaintiff was to attaining fully vested retirement benefits at age 55, or the impact that terminating plaintiff's employment would have on her pension and medical benefits.

In early September of 2012, plaintiff learned from the pension administrator that she would receive reduced pension benefits because her employment was ending before she reached age 55.[3] She had not spoken to anyone at Cessna about pension benefits until after her meeting with Gifford and Manuel on August 31, 2012. Manuel had no knowledge of employee pension benefits, but on the day of that meeting she did tell Gifford that plaintiff was 54 years old. That was the first time Gifford was aware of plaintiff's age. Plaintiff was actually 53 years of age at the time.

Plaintiff filed suit on October 30, 2012, alleging that defendant violated her rights under ERISA by interfering with her vested post-retirement pension benefits and extended retirement medical benefits. See Complaint (Doc. #1). On February 25, 2013, after she received a notice of right to suit letter from the EEOC, plaintiff filed a motion to amend her complaint to assert a claim

---

[3] Plaintiff's date of birth is October 23, 1958.

-8-

for relief under the ADEA. See Motion To Amend (Doc. #16).[4] The Court granted plaintiff's motion and plaintiff filed her first amended complaint, asserting that her termination violated both ERISA and the ADEA. See Doc. #20 filed March 14, 2013 (order allowing amendment); Doc. #21 filed March 14, 2013 (first amended complaint). On March 28, 2013, defendant answered and moved to dismiss plaintiff's first amended complaint. See Defendant Cessna Aircraft Company's Motion To Dismiss Plaintiff's First Amended Complaint (Doc. #25); Defendant Cessna Aircraft Company's Answer To Plaintiff's First Amended Complaint (Doc. #27).

On April 17, 2013, plaintiff filed her second amended complaint without seeking defendant's consent or leave of court. Doc. #29. The second amended complaint contains many more factual allegations about her performance evaluations. It too alleges a violation of ERISA and the ADEA. See id. Counts I, III. The second amended complaint also claims that defendant violated the ADEA by using years of service and/or salary as a proxy for age, and that age was the motivating factor to eliminate plaintiff's employment. See id. Count II.

Defendant submits three dispositive motions in which it argues that one or another iteration of plaintiff's complaint should be dismissed or that as a matter of law, judgment should be entered in its favor. The Court overrules as moot defendant's motions to dismiss; the pretrial order entered on July 14, 2013 sets forth the operative claims and controls the course of this action. See Fed. R. Civ. P. 16(d); D. Kan. R. 16.2(c); Pretrial Order (Doc. #39).

---

[4] On November 8, 2012, plaintiff filed her charge with the Kansas Human Rights Commission and the EEOC, alleging that defendant had discriminated against her on the basis of age. See Charge of Discrimination (Doc. #16-2). On the charge, she wrote "08-31-2012" as both the earliest and the latest dates that the discrimination took place.

**Analysis**

As noted, plaintiff's second amended complaint alleges that (1) defendant violated ERISA by terminating her employment with the specific intent to deprive her of full pension benefits, (2) using years of service and/or salary as a proxy for age, defendant violated the ADEA because age was the motivating factor in terminating plaintiff's employment, and (3) defendant violated the ADEA by replacing plaintiff with a substantially younger employee or an employee who earned significantly less. Defendant argues that it is entitled to summary judgment because plaintiff has not established (1) a prima facie case of discrimination under the ADEA or (2) a genuine issue of material fact whether defendant's legitimate, non-discriminatory reasons for its actions are a pretext for discrimination. Defendant also argues that plaintiff has not established that it violated her protected ERISA rights because she has not shown that defendant had the specific intent to interfere with those rights.

**A.  ADEA**

The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Supreme Court has determined that the statutory language requires plaintiff to prove that age was the "but-for" cause of the employer's adverse decision. Gross v. FBL Servs., Inc., 557 U.S. 167, 176 (2009). This standard does not go so far as to require plaintiff to show that age was the employer's sole motivating factor. Jones v. Okla. City Pub. Schs., 617 F.3d 1273, 1277 (10th Cir. 2010).

Plaintiff may establish that defendant acted with discriminatory intent under the ADEA either directly or through the inferential burden-shifting scheme established in McDonnell Douglas

Corp. v. Green, 411 U.S. 792, 824 (1973). See Jones, 617 F.3d at 1278-79.[5] Plaintiff states that she relies on circumstantial evidence to prove both defendant's discriminatory intent and that defendant's proffered reason for her termination is pretextual. See Doc. #45 at 44. In other words, she has no direct evidence of discrimination and she acknowledges that her claims are to be analyzed under McDonnell Douglas.

Under the McDonnell Douglas burden-shifting framework, plaintiff has the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802; Sanders v. Sw. Bell Tel., L.P., 544 F.3d 1101, 1105 (10th Cir. 2008) (quoting Sanchez v. Denver Pub. Sch., 164 F.3d 527, 531 (10th Cir. 1998)). If plaintiff satisfies her burden, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for terminating plaintiff's employment. McDonnell Douglas, 411 U.S. at 802-03; Sanders, 544 F.3d at 1105 (citing Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). If defendant does so, the burden shifts back to plaintiff to show a genuine issue of material fact whether defendant's stated reason is pretextual, i.e. unworthy of belief. Sanders, 544 F.3d at 1105. If plaintiff so shows, she gets over the hurdle of summary judgment. Id. (quoting Morgan, 108 F.3d at 1323)).

To establish a prima facie case of age discrimination under the ADEA, plaintiff must show that (1) she is a member of the class protected by the ADEA; (2) she suffered an adverse employment action; (3) she was doing satisfactory work; and (4) she was treated less favorably than others not in the protected class. See Jones, 617 F.3d at 1279. Defendant argues that plaintiff has

---

[5] In Jones, the Tenth Circuit considered whether the McDonnell Douglas framework applied to ADEA claims after the Supreme Court's decision in Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009). It held that "Gross does not preclude our continued application of McDonnell Douglas to ADEA claims." Jones, 617 F.3d at 1278.

not satisfied the third element of her ADEA claim and that she cannot show defendant's actions were taken under circumstances giving rise to an inference of discrimination. See Doc. #41 at 28.

Defendant concedes that many of the individuals in Interior Engineering for whom plaintiff performed services were satisfied with her job performance. That was true while plaintiff was in the Interior Engineering Department and after she moved to the Finance Department. Quoting the following language from Linnebur v. United Telephone Association, Inc., No. 10-1379-RDR, 2013 WL 3815865 (D. Kan. July 22, 2013), plaintiff contends that she has therefore satisfied the third element:

> [A] plaintiff may meet the [third] element of a prima face case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she held her position for a significant period of time.

2013 WL 3815865, at *5 (citations omitted). Plaintiff has presented evidence that managers and supervisors whom she supported found her work satisfactory and that defendant employed her for 34 years. When determining whether plaintiff has made a prima facie case, the Court looks only to plaintiff's evidence of her own performance because "it is important not to conflate [plaintiff's] claim of discrimination with defendant's proffered explanation." Orr v. City of Albuquerque, 417 F.3d 1144, 1149 (10th Cir. 2005). Accordingly, the Court finds that plaintiff has satisfied the third element of her prima facie case.

The Court next considers whether defendant has articulated a legitimate, non-discriminatory reason for termination. Defendant contends that plaintiff was not qualified for her position as an FBP, that she did not learn the required skills while on the job and that she did not take steps to pursue training or education to develop the necessary knowledge. In short, defendant asserts that

it terminated plaintiff's employment because she could not meet defendant's expectations of a Grade 10 FBP.[6] Because the parties are describing different job duties, plaintiff's evidence of satisfactory performance does not undercut defendant's argument. When plaintiff transferred from Interior Engineering to Finance, plaintiff retained some or perhaps all of her responsibilities. Defendant does not contend that plaintiff's performance of those duties slackened. Instead, defendant presents unrefuted evidence that plaintiff failed to satisfy additional expectations for a Grade 10 FBP. Poor performance is a legitimate, non-discriminatory reason for termination. Bertsch v. Overstock.com, 684 F.3d 1023, 1029 (10th Cir. 2012). Accordingly, the Court must consider whether plaintiff can establish a genuine issue of material fact with regard to pretext.

Pretext exists when an employer does not honestly represent its reasons for terminating an employee. Miller v. Eby Realty Grp. LLC, 396 F.3d 1105, 1111 (10th Cir. 2005). Plaintiff argues that inferior job performance was a pretext and that Gifford's problem with her age was the real reason for termination.[7] Plaintiff cannot establish pretext, however, as she has admitted the truth of certain factual allegations which foreclose her argument. Specifically, she has admitted the following undisputed facts: "At the time the decision was made to terminate plaintiff, neither

---

[6] Indeed, plaintiff admits that in Gifford's opinion, defendant terminated her because she did not have the qualifications for a Grade 10 FBP and she was not meeting Gifford's expectations of a Grade 10 FBP.

[7] Plaintiff repeatedly argues that her termination was solely Gifford's doing, and she seeks to distinguish Gifford's opinion of her performance from Cessna's opinion of her performance. Without evidence of such a distinction, however, the Court cannot embrace that dichotomy. The record tell us that Gifford made the decision to terminate plaintiff's employment and that Manuel and Poulson ratified her decision. In determining whether defendant's proffered reason is pretextual, the Court must assess the facts as they appeared to the persons making the decision, i.e. Gifford, Manuel and Poulson. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1231 (10th Cir. 2000).

Gifford, Manuel or Poulson were aware of, nor did they consider, plaintiff's age, how close plaintiff was to attaining fully vested retirement benefits at age 55, or the impact that terminating plaintiff would have on her pension and medical benefits." See Doc. #41 ¶ 95; Doc. #45 ¶ 95. With this admission and based on the record as a whole, plaintiff cannot withstand summary judgment. Plaintiff has not presented evidence sufficient to raise a genuine dispute of material fact whether defendant's stated reason for termination is pretextual. See Reeves v. Sanderson Plumbing, 530 U.S. 133, 147-49 (2000). Accordingly, the Court enters summary judgment for defendant on plaintiff's ADEA claim.

### B. ERISA

As noted, plaintiff claims that defendant violated ERISA by terminating her employment with the specific intent to deprive her of receiving full pension benefits. Defendant seeks summary judgment because plaintiff cannot meet her burden to show that defendant had the specific intent to deprive her of pension benefits. Section 510 of ERISA makes it illegal for an employer to discharge or discriminate against a participant for exercising any right to which she is entitled under the terms of an employee benefit plan or for the purpose of interfering with the attainment of any right to which such person may become entitled. 29 U.S.C. § 1140. To prevail on her claim of interference with ERISA benefits, plaintiff must establish by a preponderance of the evidence that defendant was motivated to discharge plaintiff by a specific intent to interfere with employee benefits protected by ERISA. Trujillo v. Pacificorp, 524 F.3d 1149, 1160 (10th Cir. 2008). Plaintiff must also allege that defendant's illegitimate motive was a factor – though not necessarily the only factor – in its decision to terminate her employment. Garratt v. Walker, 164 F.3d 1249, 1256 (10th Cir. 1998) (en banc). If the alleged interference is a mere consequence of the termination, as opposed to a motivating

factor behind it, plaintiff cannot prevail. The operative question, therefore, is whether defendant fired plaintiff to prevent her from receiving benefits. Carter v. Pathfinder Energy Servs., Inc., 662 F.3d 1134, 1151 (10th Cir. 2011) (internal citations omitted).

Plaintiff does not contest defendant's assertion that as of August 31, 2012, when Gifford, Manuel and Poulson decided to terminate her employment, they were not aware of, and did not consider, her age, how close she was to attaining fully vested retirement benefits, or the impact that terminating her employment would have on her pension and medical benefits. In her EEOC charge, plaintiff stated that August 31, 2012 was both the earliest and the latest date on which the alleged age discrimination occurred. Accordingly, that is the relevant date for the Court to consider defendant's knowledge and intentions.

Plaintiff also asserts that defendant's witnesses are not credible in claiming lack of knowledge of the company's pension plan requirements for vesting and early retirement, but she provides no evidence or reason to question their credibility. Indeed, plaintiff presents no evidence of the Cessna retirement plan, its terms or benefits. Moreover, defendant allowed plaintiff 30 days to seek another job and remain employed, which is arguably inconsistent with a motive of preventing her from receiving pension benefits.

Even if plaintiff could show that Gifford, Manuel and Poulson knew that she was close to being eligible for pension benefits, that fact would not by itself demonstrate pretext. "It is obvious that benefit costs make up a large amount of the costs of an employee to a company, and that pension rights are a substantial component of benefit costs, but these undeniable propositions are not sufficient standing alone to prove the requisite intent by the path of pretext." Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 239 (4th Cir. 1991) (quoted with approval in Apsley v.

Boeing Co., 691 F.3d 1184, 1207 (10th Cir. 2012)).

Plaintiff has not demonstrated a genuine issue of material fact whether defendant discharged her to interfere with her right to collect pension benefits. Accordingly, defendant is entitled to summary judgment on plaintiff's ERISA claim.

**IT IS THEREFORE ORDERED** that Defendant Cessna Aircraft Company's Motion To Dismiss Plaintiff's First Amended Complaint (Doc. #25) filed March 28, 2013 be and hereby is **OVERRULED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendant Cessna Aircraft Company's Motion To Dismiss Or Strike Plaintiff's Second Amended Complaint (Doc. #32) filed May 1, 2013 be and hereby is **OVERRULED AS MOOT**.

**IT IS FURTHER ORDERED** that Cessna Aircraft Company's Motion For Summary Judgment (Doc. #40) filed July 26, 2013 be and hereby is **SUSTAINED**.

Dated this 6th day of January, 2014 at Kansas City, Kansas.

> s/ Kathryn H. Vratil
> KATHRYN H. VRATIL
> United States District Judge